### N. M. WILSON v. S. S. PETERSON.

The disqualifications of the persons who hold an election for State and county officers will not affect the validity of the election. Such persons are *de facto* officers, whose acts are valid as to third persons, and cannot be collaterally impeached.

In the absence of fraud it is not material to the validity of an election that the persons appointed judges to hold it electioneered, or were absent from their posts at different times during the day.

Under the Act of 1871-'72, chap. 185, sec. 16, (Battle's Revisal, chap. 52, sec. 18,) it is unlawful for a voter to vote for different county officers on separate tickets; but he is not bound to vote for more of the candidates for the different officers than he chooses, and if a ticket be found in the ballot box containing a vote for only one of the proposed officers, it must be counted for him, unless it can be shown that the person who voted it voted also for other candidates on another ticket, in which latter case his tickets must all be thrown out.

If there be two candidates for different offices having the same name, and a ticket be found in the ballot box having that name and no other on it, it may be proved by intrinsic evidence for which of the candidates it was given.

This was an ACTION brought in the name of the State, with the consent of the Attorney General, on the information of the plaintiff against the defendant, to inquire by what authority the defendant usurped and held the office of sheriff of Yancey county. It came on for trial at the last term of YANCEY Superior Court before his Honor, *Henry, J.,* when a jury was dispensed with by the consent of the parties, and the Judge found the facts, and thereupon decided the law in favor of the defendant, and from his judgment the plaintiff appealed.

The facts as found by the Judge which raised the questions decided by this Court are fully and clearly stated in the opinion.

*Malone* and *McCorkle & Bailey,* for the plaintiff.
No counsel for the defendant in this Court.

RODMAN, J. An election for sheriff and other county officers for the county of Yancey was held in 1872. The relator and the defendant were candidates for the office of sheriff. The judges of the polls returned that the relator had received 434 votes and the defendant 428. The County Commissioners were of opinion that seven or more of the votes returned for the relator were illegal and should not be counted, and declared the defendant elected, and inducted him into office. Upon the trial of this action before his Honor, the District Judge, he was of a like opinion, and the relator appealed to this Court.

1. The first objection to the votes returned for the relator respected the whole vote given at Township No. 1. One of the judges was not a registered voter, nor was he qualified to vote, not having resided within the State for the twelve months next preceding the election. Also " the officer appointed by the sheriff to open and protect the polls was a boy under twenty-one years of age." We are at a loss to know

what officer is here alluded to, as the only officers mentioned in the Act 1871–'72, chap. 185, are the four judges of the election and the registrar of the township. It is not material, however. For we think that the validity of the vote is not affected by the disqualification of the officers who held the election. They were *de facto* officers, whose acts are valid as to third persons, and cannot be collaterally impeached. Neither in the absence of all proof of fraud is it material that the judges electioneered or were absent at different times during the day. We think his Honor errer in his conclusion on this point.

2. His Honor finds " that at No. 7 Township several tickets were handed in folded up and unrolled and deposited in the box, and that near a dozen or at least six votes were counted for N. M. Wilson (the relator) which had been deposited on a separate piece of paper with no other name upon it, and the count of the poll warrants the conclusion that the voters casting them voted also for other county candidates in the same box."

We do not understand his Honor to find that the number of votes for sheriff, as shown by the tickets, exceeded the number of votes on the list; but merely that an inspection of the tickets in the box showed that some voters (six) had voted for some or all of the county officers except sheriff on one ticket, and for sheriff on another ticket. His Honor was of opinion that under section 16 of the Act of 1871–'72, which requires the names of all the county officers voted for to be on one ticket, these six votes for the relator as sheriff were illegal and should not be counted, and therefore deducted them from his returned vote.

Certainly it is the duty of the judges of election to permit no voter to vote more than one ticket for county officers. The object of the law was to prevent multiplied voting for the same office, which, if the judges performed their duty, would be impossible. If the judges inadvertently or igno-

rantly permit A B to vote for sheriff on one ticket and for some other officers (County Commissioners for example) on another, both the tickets voted by A B should be rejected on the count on the same principle upon which they should have been rejected when they were offered. But suppose this voting for several officers on separate tickets escapes notice at the time, and it is discovered on examination of the box that there are tickets for sheriff only, and tickets for County Commissioners only, and it is not known that any two of these tickets were voted by one person. In such case the question as to how the votes shall be treated becomes a very different one. No voter is required to vote for candidates for all the offices to be filled, or what may be called a full ticket. He may vote for sheriff only or for County Commissioners only, if he so please. It cannot be known without extrinsic evidence that any one of these tickets is unlawful, and it is not reasonable to reject them all on the bare possibility that they may be so, or on the certainty that some of them are so, unless it can be shown which of them are. In the present case it is possible that the six voters who deposited their tickets for Wilson for sheriff did not deposit any other ticket, in which case their votes were regular and lawful. It is not more probable that they voted two tickets than that other voters did. Before a vote can be rejected for illegality, the illegality must be attached to it by at least probable proof. We think his Honor erred in rejecting these votes.

3. The relator being a candidate for sheriff and a man named Wilson a candidate for County Commissioner, there were found in the box at Township No. 7 three tickets with the word " Wilson " written on them, and nothing else. As the matter stood these votes could not have been counted for any one; they were as void as so many pieces of blank paper. But it was proved for the relator, and his Honor so finds,

that one of these tickets was intended by the voter to be for the relator for sheriff.

It seems on the verge of the law to permit such a ticket, presenting what in conveyancing would be called a *patent* ambiguity, to be aided by external proof. But we believe the general practice in such cases has been to allow it, and we accordingly hold the relator entitled to that vote.

The judgment below is reversed, and judgment is given here for the relator.

PER CURIAM. Judgment reversed, and judgment in this Court for plaintiff.